# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| U.S. BANCORP INVESTMENTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-3418-CV-S-RED |
| | ) |
| SIGNATURE BANK, INC., and | ) |
| NADIA CAVNER, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The Court held a hearing on Plaintiff's Motion for Temporary Restraining Order (Doc. 5) on September 13, 2005. Upon reviewing the briefs and exhibits submitted by the parties and considering the arguments made by counsel, the Plaintiff's Motion for Temporary Restraining Order is due to be **DENIED**.

Plaintiff is the former employer of Defendant Cavner. Defendant Cavner is a financial advisor. She resigned her employment with Plaintiff on the same day as several other members of her team. Defendant Cavner and the other members of her team who left Plaintiff's employ immediately became employed with Defendant Signature Bank. Defendant Cavner and her team developed a list of her former clients and sent notices to them of her change in employment the same day she resigned. Also on the same day, Defendant Signature Bank sent out a similar notice to its own customers, advising them of Defendant Cavner's move. Later, Plaintiff sent a notice to its customers, including those clients who utilized Defendant Cavner's services.

Plaintiff contends that Defendant Cavner's use of client names, although allegedly compiled from Defendant Cavner's memory, and the notice sent to these clients, including information on how

to call for an appointment, are breaches of the non-solicitation agreement Defendant Cavner signed with Plaintiff. Defendants claim they have no intention to send out any additional mailings or other communications to the clients at this time. Defendants argue that Defendant Cavner chose the appropriate way to disengage her employment with Plaintiff and has not breached any agreements.

Applicants for injunctive relief occasionally are faced with the possibility that irreparable injury will occur before the hearing for a preliminary injunction required by Rule 65(a) can be held. In that event a temporary restraining order may be available under Rule 65(b). The order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party.

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a temporary restraining order should be issued, the Court must determine whether immediate and irreparable injury, loss, or damage will result to the applicant. The Court is required to consider the factors set forth in *Dataphase Systems, Inc., v. C.L. Sys. Inc.,* 640 F.2d 109, 114 (8th Cir.1981) ( *en banc* ). The Eighth Circuit summarized those factors as follows:

> [w]hen considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest.

*Dataphase Systems, Inc. v. C.L. Sys. Inc.,* 640 F.2d 109, 114 (8th Cir.1981) ( *en banc* ).

The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. *Baker Electric Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.,* 871 F.2d 734, 737 (8th

Cir.1989) ( *en banc* ). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Electric Co-op*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corporation v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir.1987)). *Cited in Crawford Capital Corp. v. Bear Soldier Dist.*, 374 F. Supp.2d 821, 824 (D.N.D. 2005).

At this point, the Court finds that the element of "likelihood of success on the merits" is a close call. Both sides presented compelling arguments both in their briefs and during the hearing explaining their respective views of the situation. There are certainly circumstances surrounding Defendant Cavner's departure that raise serious questions as to whether she breached her agreement. The Court finds that the element of "balancing the equities" is likewise a close call. However, due to the other factors which, in this case, strongly weigh against the issuance of a TRO, specifically the public interest and irreparable harm elements, the Court does not find these factors to be dispositive. Although these two factors are taken into account, the Court will specifically address the remaining two factors which the Court finds most compelling.

**Irreparable harm:**

" 'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.' " *Bandag, Inc.,* 190 F.3d at 926 (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506-07 (1959)). "Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Id.; Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996) (" '[T]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.' ") (quoting *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987)). Various considerations may be relevant to

3

a determination of "irreparable harm." For example, a movant's delay in seeking relief or objecting to the actions the movant seeks to enjoin "belies any claim of irreparable injury pending trial." *Hubbard Feeds v. Animal Feed Supplement,* 182 F.3d 598, 603 (8th Cir.1999). Moreover, an adequate showing of "irreparable harm" cannot be something that has never been the focus of the underlying lawsuit. *See United States v. Green Acres Enters., Inc.,* 86 F.3d 130, 133 (8th Cir.1996). A sufficient showing on this factor can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op.,* 28 F.3d at 1473. Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue. *See Frank B. Hall & Co. v. Alexander & Alexander, Inc.,* 974 F.2d 1020, 1025 (8th Cir.1992). Even where money damages are available to compensate for some of the harm to the movant, other less tangible injuries cannot be so easily valued or compensated, so that the availability of money damages that do not fully compensate the movant do not preclude a preliminary injunction. *Glenwood Bridge,* 940 F.2d at 371-72.

In the case at bar, Plaintiff has not established the sort of urgency that is necessary for a TRO. While it may have been ideal for a joint notice to issue to all of Plaintiffs' customers who utilized Defendant Cavner's services, this is not what occurred. Instead, Defendants as a result of their own secret planning succeeded in getting out the first notice in conjunction with the general promotion of their new department. This gave Defendants an advantage and Plaintiff has likely lost clients as a result of their activity. The instant issue is not what harm has been done, but rather is a TRO necessary to prevent irreparable harm from occurring between now and the arbitration.

The Court found little in the briefs or arguments to establish what benefit a TRO would confer at this point. Any harm that can be said to have occurred has already occurred and is not continuing. The client list has been prepared and notices have been sent out. There was no evidence

4

that Defendants are presently calling anyone on the client list or otherwise engaging them. It is true that Defendant Cavner may have contact with those former clients, but at this point that contact would be initiated by the client, not Defendants. Moreover, the Court notes that arbitration of this case will quickly ensue. The arbitration panel will also have the ability to grant injunctive relief, if any further steps are taken which Plaintiffs find objectionable or which may cause irreparable harm.

In regard to the claim that Defendant Cavner was in violation of her agreement by soliciting employees to leave Plaintiff there is a serious question as to whether this provision is enforceable in an at will employment state, such as Missouri. More significant is the fact that a TRO now cannot reverse the departure of the three employees who have already left. Additionally, there was no evidence that any such solicitation of additional employees of Plaintiff was ongoing at the time of the hearing. Thus, the threat of future irreparable harm on this claim has not been established.

**The Public Interest**

The last *Dataphase* factor the court must consider is the "public interest." *Entergy, Ark., Inc.,* 210 F.3d at 898; *Bandag, Inc.,* 190 F.3d at 926; *Iowa Right to Life Committee, Inc.,* 187 F.3d at 966. In this case, the public interest appears clear. As stated above, the Court is aware of the nature of the relationship that exists between an investment advisor and her clients. Defendant Cavner provides financial investment advice, a service that is closely personal and is provided based upon trust and past performance. These clients may incur a gain or loss depending on the advice they are given and the access they have to their financial advisor. As noted by the letter and spirit of the NASD rules, the ability to choose and access one's selected financial advisor is very important. The Court feels the need to tread very carefully as these client's interests are connected to the possible TRO. It appears that the public interest in this matter is for existing customers to know where

Defendant Cavner is and to be able to contact her without undue restrictions.

The Court finds that to issue a TRO as requested by Plaintiff at this point would be a detriment to the clients, and it would not serve to stop Defendants from any conduct in which they are currently engaging. For these reasons, the public interest weighs in favor of no TRO issuing, and no barriers being erected between the clients and their chosen financial advisor.

Accordingly, for the reasons stated above, Plaintiff's Motion for Temporary Restraining Order (Doc. 5) is hereby **DENIED**.

**IT IS SO ORDERED.**

DATE:	September 14, 2005	  /s/ Richard E. Dorr
	RICHARD E. DORR, JUDGE
	UNITED STATES DISTRICT COURT